Caruthers, J.,
delivered the opinion of the Court.
James Jones died in Rutherford county, and under a proceeding in the County Court, the slaves and real *136 estate were sold by commissioners, on tbe 7th. December, 1866, and the report of said sale was confirmed at February Term, 1866, of said Court. The notes for the purchase money of slaves or land, were placed in the hands of the commissioners for collection and distribution. No titles were decreed to the respective purchasers of either the land or slaves.' The land sold for $7949, and the slaves for $6434, making $14,383, of which the share of each heir, would be $1698'. Louisa Jones, a daughter of the deceased, being then a widow with one child, Letitia, purchased two of the slaves, at the sale for $2074, for which she executed her note with complainant, Jones, and Henry Jamison, her securities.
On the 10th of March, 1866, she married defendant Walkup, and died in December, 1866, the said note still and yet remaining unpaid. At the January Term, 1867, the defendant administered on his wife’s estate. The two slaves went into his possession, upon his marriage, and he now holds and claims them as his own property. This bill is filed to make them liable for the debt of. $2074, and requiring the defendant, Walkup, and the infant, Letitia, to interplead, as to the proceeds of the land.
This being done, the first question is, whether under the state of facts presented, the land was so converted into personalty, as to go to the husband by virtue of his marital right, or to the child, the heir of the mother, as realty.
We are not aware that there is any reported case in this State, upon this question. But the point was presented and adjudicated in the unreported case of Elizabeth Henderson vs. James B. Reid and others, at December Term, 1853, of this Court.
*137 In that case, the real estate of the wife had been sold under a decree, and the sale reported to the Court, and confirmed without a divestiture of title when the wife died, and it was • held, that the husband, as her administrator, was entitled to her share of the notes on hand for the purchase money.
The principle settled in that case was, that by the confirmation of the report, the land was converted into personalty, to which the marital right of the husband would attach.
The same question came before the Supreme Court of Maryland, in the case of the State for the use, &c., vs. Krebs, 6 Harris and Johnson 36, and the Court say, “the mutation of her estate from real to personal, may be determined to be complete when the commissioner’s sale is ratified by the Court, and the purchaser has complied with the terms of it, by paying the money, if the sale is for cash, or by giving bonds to the representatives, if the sale is on credit.” It is not the decree divesting title, which effects the change in the character of the property, from realty to personalty, but the perfection of the sale, by a compliance with its terms on the part of the purchaser, 'and its confirmation by the Court to which it is reported.
This act of the Court completes the contract, and the nature of the propei’ty and rights of the parties are instantly changed. The purchaser is entitled to the land, and the former owner to the money. It is different before confirmation, because the sale is incomplete.
The fact that the legal title is retained as a security for the price, or that a lien is reserved, does not prevent the mutation, which is_ wrought by the sale.
*138 After this there was no way, or event by which the marital right could be defeated, but by the death of the husband, the wife surviving, before the reduction to possession of the share, or perhaps the assertion of the wife’s equity before the receipt of the money.
The act of 1851, ch. 166, § 3, and 1850, ch. 36, to which we have been referred, in argument, have no effect upon this question, but only regulate and protect the rights of femes covert while living.
The decree of the Chancellor, as to the slaves is: That they belong to the husband, but that they were bound for the purchase money, which was a lien upon them, and that unless the same was paid by a day fixed, they should be sold by the master, and the proceeds applied to the payment of the said note of Louisa Jones, the deceased wife of defendant, for $2074.
We are aware of no principle which would authorize such a decree. There is certainly no lien by the law, upon slaves for the purchase money, and there is none fixed in this case by the decree of sale, or confirmation, or by any contract.
The husband is liable for his wife’s debts contracted before coverture, at any time before her death, but not afterwards, no matter how much property he may have received by her, or even if the debt was for the price of the property received with her, as in this case. This would seem to be against conscience and our sense of justice, but it is firmly established, 2 Kent, 145. He is liable as husband, and not as debtor.
But her dioses in action, not reduced to possession in her life-time, when they come to his hands after her *139 death as administrator, would be assets, and subject to the payment of her ante-nuptial debts.
To the extent of these assets and no further, can he be made liable. He could only be made liable for this debt to the extent of her share of the proceeds of the land to which he is entitled. But he voluntarily proposes to pay off the whole debt that may remain, after the deduction of his proportion of the land fund.
And let the decree be so entered;